IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-03194-CMA-STV

JOHN PEMBROKE

    Plaintiff,

v.

TRANS UNION, LLC,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
JPMORGAN CHASE & CO., and
SELECT PORTFOLIO SERVICING, INC.,

    Defendants.

---

## ORDER ADOPTING AND AFFIRMING THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE SCOTT T. VARHOLAK

---

This matter comes before the Court on three Motions to Dismiss Plaintiff John Pembroke's Complaint—one filed by Defendant Trans Union, LLC (Doc. # 102); another filed by Defendant Select Portfolio Servicing, Inc. (SPS) (Doc. # 103); and a third filed by Defendant JPMorgan Chase Bank, N.A. (Doc. # 105). Also before the Court is Defendant Equifax Information Services, LLC's Renewed Motion for Judgment on the Pleadings. (Doc. # 122.) This Court referred all four motions to United States Magistrate Judge Scott T. Varholak pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72. (Doc # 106, 107, 123.) On October 27, 2017, Magistrate Judge Varholak issued a Recommendation (Doc. # 127), wherein he recommends that this Court grant Defendants Trans Union's and Equifax's Motions (Doc. ## 102, 122) and grant in part

and deny in part Defendants SPS' and Chase's Motions (Doc. ## 103, 105). (*Id.* at 1–2.)  Mr. Pembroke timely filed Objections to select portions of the Recommendation. (Doc. # 128.)  For the following reasons, the Court overrules Mr. Pembroke's Objections and affirms and adopts Magistrate Judge Varholak's Recommendation in its entirety.

**I.    GENERAL BACKGROUND AND PROCEDURAL HISTORY**

Magistrate Judge Varholak's Recommendation provides an extensive recitation of the factual and procedural background in this case.  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Thus, the factual background of this dispute will be reiterated only to the extent necessary to address Mr. Pembroke's Objections.

This action arises from the allegedly inaccurate reporting of Mr. Pembroke's consumer credit and the purported failure of Consumer Reporting Agencies (CRAs), and the entities that provide relevant information to CRAs (furnishers), to reinvestigate and correct these deficiencies.  (Doc. # 95.)  Mr. Pembroke specifically claims that Trans Union, Equifax, and Experian (the CRA Defendants)[1] and SPS and Chase (the Furnisher Defendants) improperly reported him as personally liable for debts that instead are solely enforceable against the John J. Pembroke Trust (JJP Trust) and the Linda D. Pembroke Living Trust (collectively, the Pembroke Trusts).  (Doc. # 95 at ¶¶ 10, 15.)

These debts stem from a refinance loan of $1.905 million, which Mr. Pembroke negotiated with Washington Mutual Bank (WaMu) in 2006.  *John J. Pembroke Living*

---

[1] Experian has not filed a motion to dismiss.  As a result, when referring to the CRA Defendants in the remainder of this order, the Court is only referencing Trans Union and Equifax.

*Trust v. U.S. Bank, N.A.*, 15CA1610 (Colo. Ct. App. June 1, 2017) (COA Judgment) at ¶ 2; *see also John J. Pembroke Living Trust v. U.S. Bank Nat'l Assoc.*, 2014CV30592, Judgment and Decree of Foreclosure (Colo. Dist. Ct. Aug. 7, 2015) (State Court Judgment) at ¶¶ 2–3.[2] As part of the loan transaction, Mr. Pembroke executed and delivered to WaMu a promissory note (Note), and the Pembroke Trusts executed a securing deed of trust. COA Judgment, ¶ 2; State Court Judgment at ¶¶ 3, 16

In 2012, due to a claimed default on the Note, U.S. Bank National Association (U.S. Bank)[3] began foreclosure proceedings. COA Judgment at ¶ 5; (Doc. # 127 at 3.) The Pembroke Trusts contested the foreclosure and sought an injunction against it in Jefferson County District Court. (Doc. # 127 at 4.) The Jefferson County District Court found against the Pembroke Trusts and entered a decree of foreclosure, which the Pembroke Trusts appealed and the Colorado Court of Appeals affirmed. *See generally* COA Judgment; State Court Judgment at 3–4.

As pertinent here, Mr. Pembroke was not a party to the state court proceedings. He did, however, testify at trial on behalf of the JJP Trust. (Doc. # 103-3.) There, as he does in this case, Mr. Pembroke contended that he executed the Note as Trustee of the

---

[2] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). "This includes another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'" *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)). Moreover, Mr. Pembroke's Amended Complaint references the related state and federal court proceedings extensively, as well as the heavily-disputed Note. (Doc. # 95 at ¶¶ 9–14, 17–18, 20, 22, 24-26, 34, 45, 56); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").
[3] As detailed in Magistrate Judge Varholak's Recommendation, the holder of the Note changed several times, but ultimately, through a merger and series of transfers, was managed by U.S. Bank as Trustee.

JJP Trust, not in his personal capacity, and he is not, therefore, personally liable on the defaulted Note. (Doc. ## 103-3 at 76–77; 128 at 3–4.)

The Jefferson County District Court did not resolve the issue of Mr. Pembroke's personal liability on the Note, stating "Mr. Pembroke is not a party to this case, and this judgment and decree of foreclosure does not decide whether Mr. Pembroke is personally liable under the [Note]." State Court Judgment at ¶ 3. The District Court did find, however, that Mr. Pembroke signed and initialed the original Note in his individual capacity,[4] and added that "[U.S. Bank] reserved its right to seek a deficiency judgment, if any, against the maker of the [Note] in a separate action." *Id.* at ¶¶ 3, 16. In affirming the District Court's decision, the Colorado Court of Appeals did not disturb these findings.

While the state court proceedings remained pending, the JJP Trust initiated a federal lawsuit in this Court, wherein it again disputed the validity and enforceability of the Note and attempted to stop the debt collection activities of various entities, including the Furnisher Defendants. *John J. Pembroke Living Trust v. U.S. Bank Nat'l Assoc.*,

---

[4] Before the Court are two versions of the Note: one contains Mr. Pembroke's initials on every page and his personal signature on the last page (Doc. # 103-4); the other does not contain Mr. Pembroke's initials on any page and includes the word "Trustee" under his signature on the last page (Doc. # 103-5). At the state court proceeding, the creditor defendants argued that the former document is the original; Mr. Pembroke and the Pembroke Trusts asserted that the latter is the original. The State Court ultimately agreed with the creditor defendants, finding "[U.S. Bank] holds the original Note containing Mr. Pembroke's original initials and signature. The Note was not fabricated or falsified as suggested by the Pembrokes." State Court Judgment at ¶ 16. The Court takes judicial notice of the state court's finding that the original Note did, indeed, contain Mr. Pembroke's individual initials and signature and did not classify him as "Trustee." *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") (internal quotations omitted).

Civil Action No. 16-cv-00020-CMA-MEH (D. Colo. 2016) (2016 Lawsuit), Doc. ## 57 at 1; 58 at 4.  The Furnisher Defendants moved to dismiss JJP Trust's Complaint.  2016 Lawsuit, Doc. ## 32, 33, 37.  This Court granted their motions, primarily on grounds that the underlying issues had already been raised and adjudicated in state court and were otherwise barred by the applicable statute of limitations.  (Doc. ## 60, 65.)

Meanwhile, in early 2016, Mr. Pembroke requested a copy of his credit report from the CRA Defendants.  (Doc. # 95 at ¶ 14.)  He received credit reports that reflected a delinquency on the Note and a home equity line of credit as personal liabilities against him.  (*Id.*)  Mr. Pembroke disputed those reports through the CRA Defendants' online dispute request system.  He also raised his concerns in letters to the CRA and Furnisher Defendants.  (*Id.* at ¶ 16.)  In so doing, Mr. Pembroke alerted the CRA and Furnisher Defendants to the state court proceedings as proof that he was not personally liable on the Note and requested that the debt be removed from his credit report.  (*Id.* at ¶ 17.)  The CRA Defendants did not correct the information.  (*Id.* at ¶ 18)  As a result, Mr. Pembroke alleges that he sustained significant financial losses, including over $665,000.00 in lost business income.  (*Id.* at ¶¶ 21, 23-24, 27–28.)

Mr. Pembroke's Second Amended Complaint subsequently raises seven claims for relief: Claims One and Two seek relief under the Fair Credit Reporting Act (FCRA), against the CRA Defendants; Claim Three seeks relief under the FCRA against the Furnisher Defendants; Claim Four contends that all Defendants were negligent in their reporting; Claim Five raises defamation allegations against all Defendants; Claim Six seeks relief against all Defendants for the intentional infliction of emotional distress; and

Claim Seven alleges that the Furnisher Defendants violated the Fair Debt Collections Practices Act (FDCPA).

Collectively, Defendants' Motions to Dismiss seek to dismiss all of Mr. Pembroke's claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). (See ## 102, 103, 105, 122). With regard to those motions, Magistrate Judge Varholak recommends as follows: First, he recommends that Plaintiff's Claims One and Two be dismissed entirely because, among other reasons, they amount an improper collateral attack on the underlying debt. Second, he recommends that Claims Four, Five, and Six be dismissed as against the CRS Defendants but allowed to proceed as against the Furnisher Defendants. Third, he recommends that Claim Seven against the Furnisher Defendants be dismissed as barred by claim preclusion but that Claim Three against the Furnisher Defendants be allowed to proceed.

## II.     OBJECTIONS AND STANDARD OF REVIEW

No party has objected to Magistrate Judge Varholak's Recommendation with respect to Claims Three, Four, Five, and Six. "[T]he district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports. In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). After reviewing the Recommendation of Magistrate Judge Varholak, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the conclusions in the Recommendation that were not objected to are sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). The

6

Court there affirms and adopts Magistrate Judge Varholak's Recommendation that Claims Three, Four, Five, and Six be allowed to proceed against the Furnisher Defendants; and Claims Four, Five, and Six be dismissed as against the CRS Defendants.

Mr. Pembroke, however, objects to Magistrate Judge Varholak's Recommendation with respect to Claims One, Two, and Seven. He specifically "objects to the Recommendations determinations that his FCRA claims against [the CRA Defendants] be dismissed"[5] and "that his FDCPA claim against [the Furnisher Defendants] be dismissed." Because Fed. R. Civ. P. 72(b)(3) requires that the district judge conduct a de novo review of any part of the Recommendation that has been properly objected to, the Court reviews de novo Magistrate Judge Varholak's Recommendation with respect to Claims One, Two, and Seven.

In conducting the review, a "district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Any arguments raised for the first time in objections are deemed waivable and need not be considered by the district court. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

---

[5] In his Objections to the dismissal of "his FCRA claims against [the CRA Defendants]," Mr. Pembroke does not make any reference to the portion of the Recommendation discussing a willful violation under the FCRA in the context of the discussion with respect to Claims Four, Five, and Six. (Doc. # 127 at 19–23.) Mr. Pembroke objects only to Magistrate Judge Varholak's recommended dismissal of Claims One and Two. The Court therefore reviewed Magistrate Judge Varholak's conclusions on the willfulness issue for clear error, in conjunction with the other non-objected-to portions of the Recommendation.

### III. <u>LAW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has 'not nudged [his] claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

### IV. <u>ANALYSIS</u>

**A. Claims One and Two: FCRA Claims Against the CRA Defendants**

Mr. Pembroke brings FCRA claims against the CRA Defendants pursuant to 15 U.S.C. § 1681e and § 1681i.

8

Section 1681e requires a CRA preparing a consumer report to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a CRA is put on notice that a credit report contains incomplete or inaccurate information, the CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within thirty days. 15 U.S.C. § 1681i(a)(1)(A).

"A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report." *Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015). The FCRA is not a proper vehicle for collaterally attacking the legal validity of consumer debts. *See*, *e.g.*, *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892 (9th Cir. 2010) ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding a reasonable reinvestigation does not entail resolving "legal issue[s] that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA"). Indeed, a CRA is a third party lacking any direct relationship with the consumer, and its responsibility is to "re-investigate" a matter once already investigated in the first place. 15 U.S.C. § 1681i(a)(1)). Hence, a consumer disputing the legal validity of a debt that appears on his credit report should first attempt to resolve the matter directly with the creditor or furnisher, which "stands in a far better position to make a thorough

investigation of a disputed debt than the CRA does." *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147 (9th Cir. 2009). As the Ninth Circuit has explained:

> A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits. Indeed, determining whether the consumer has a valid defense "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *DeAndrade*, 523 F.3d at 68. Nor is a CRA obligated not to report any information about the disputed item simply because the consumer asserts a legal defense. "[T]he very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991).

*Carvalho*, 629 F.3d at 892.

Mr. Pembroke's Claims One and Two are based entirely on his assertion that he is not personally liable on the defaulted Note. As explained, the Jefferson County District Court, although not reaching the issue of Mr. Pembroke's (a non-party's) personal liability, found that Mr. Pembroke individually executed and signed the Note. Mr. Pembroke's legal disputes with respect to this finding and his possible financial obligations flowing therefrom are not disputes that the CRA Defendants are required or equipped to resolve in the first instance. Mr. Pembroke's contentions that they do so amount to nothing more than a collateral attack on the legal validity of his debt.

In his Objections, Mr. Pembroke nonetheless argues that two documents demonstrate the unreasonableness of the CRA Defendants' conduct. He implies that these documents should have caused the CRA Defendants to determine that Mr. Pembroke was not liable on the Note and therefore amend his credit reports

accordingly—(1) a statement by the Housing of Urban Development (HUD) listing the Pembroke Trusts as the borrowers on the Note and (2) a statement by U.S. Bank in state court pleadings that the Pembroke Trusts executed and delivered the Note. Mr. Pembroke further contends that Magistrate Judge Varholak's lack of discussion with respect to these documents casts doubt on his Recommendation.

The Court disagrees. These documents do not resolve the issue of Mr. Pembroke's possibly outstanding personal debt. Instead, these documents speak to *the Pembroke Trusts'* liability on the Note, not Mr. Pembroke's liability—an issue, which, again, has not been resolved by any judicial entity. *See Wickstrom v. Experian*, Case No. 1:09-cv-591, 2010 WL 2651303, at *5 (W.D. Mich. July 1, 2010) ("Plaintiff did not have a right to removal of the debt from his credit report until some court declared that . . . plaintiff was not personally liable on the account that he opened."). And, the state court finding that Mr. Pembroke, himself, executed the loan documents suggest otherwise—that he may indeed be personally liable.[6] Moreover, Mr. Pembroke's reliance on these documents further demonstrates his clear attempt to use the FCRA as a vehicle to collaterally attack the legal validity of his purported debt, a legal issue that the CRAs are not equipped or required to resolve.

Finally, Mr. Pembroke asserts that, at a minimum, the Court should not dismiss his allegation that the CRA Defendants violated § 1681c of the FCRA by not reporting

---

[6] "[I]f the documents central to a plaintiff's claim contradict the allegations of the amended complaint, the documents control and [the] Court need not accept as true the allegations in the [] complaint." *Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1368 (D.N.M. 2012) (quotation omitted).

that the validity of his debt was in dispute. He adds that the Recommendation erred in failing to discuss this issue. Again, the Court disagrees.

Section 1681c(f) states that "if a consumer reporting agency is notified pursuant to [§ 1681s-2(a)(3)] that information regarding a consumer which was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information." *See* 15 U.S.C. § 1681c(f). Section 1681s-2(a)(3) then places a duty on furnishers of credit information to notify CRAs that a consumer disputed information directly with the furnisher. In other words, CRAs are required to report that a debt is in dispute only when a furnisher of information notifies the CRA to do so. This requirement underscores the importance of disputing one's debt with the furnishers of information, rather than the CRAs.

Mr. Pembroke's Complaint specifically alleges that the Furnisher Defendants did not notify the CRA Defendants that the underlying debt was in dispute (Doc. # 95 at ¶ 51) and that the Furnishers "failed to correct the information provided to the [CRA Defendants] or otherwise provided incorrect information" (Id. at ¶ 19). These allegations indicate that the Furnisher Defendants never notified the CRA Defendants of the dispute as required under § 1681s-2(a)(3). Because the CRA Defendants were not notified that Mr. Pembroke disputed the information with the Furnishers, Mr. Pembroke's claim against the CRA Defendants under § 1681c(f) must be dismissed under Rule 12(b)(6).

For the foregoing reasons, the Court concludes that Mr. Pembroke's Claims One and Two mount an improper and insufficient attack under the FCRA and must be dismissed.[7]

**B. Claim Seven: FDCPA Claim Against the Furnishers**

Mr. Pembroke's FDCPA claims against the Furnisher Defendants allege that they violated 15 U.S.C. § 1692 by falsely reporting his debt and attempting to collect on it. Magistrate Judge Varholak recommends dismissal of these claims pursuant to the doctrine of claim preclusion based on the 2016 Lawsuit. Mr. Pembroke objects to that recommendation.

Claim preclusion "prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously-issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). Claim preclusion will not, however, bar a party that "did not have a full and fair opportunity to litigate the claim in the prior action." *Id.* (internal quotation omitted). The doctrine requires a showing that: (1) a final judgment was entered on the merits; (2) the parties in both suits are the same; and (3) the causes of action are identical. *See, e.g., id*. Only elements two and three are in dispute. The Court addresses each in turn.

---

[7] Mr. Pembroke requests that these claims be dismissed without prejudice, rather than with prejudice as recommended by Magistrate Judge Varholak. Based on the Court's conclusion that Mr. Pembroke's allegations amount to no more than a collateral attack on the underlying debt, which the CRA Defendants are ill-equipped to resolve, any amendment to his claims could not cure this defect and would, therefore, be futile. Thus, dismissal with prejudice is appropriate.

13

1. <u>The Parties</u>

It is undisputed that the Furnisher Defendants were also defendants in the 2016 Lawsuit. Although Mr. Pembroke was not a party, his trust, the JJP Trust, was the sole plaintiff in that suit. Magistrate Judge Varholak determined that Mr. Pembroke and the JJP Trust were in privity, such that claim preclusion still applied to bar a subsequent suit. Mr. Pembroke objects to that finding, arguing that he has no control over the JJP Trust. Having reviewed the issue de novo, the Court overrules Mr. Pembroke's objection, and has no trouble concluding that privity exists between Mr. Pembroke and the JJP Trust.

Privity requires a showing "that the parties in the two actions are really and substantially in interest the same." *Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1119 (10th Cir. 2014). That showing is satisfied here. Both lawsuits hinge on an identical issue—whether the Note executed to refinance Mr. Pembroke's home was valid and enforceable. And, even more telling, in the 2016 Lawsuit, the JJP Trust asserted, and requested relief from, the Furnisher Defendants' debt collection activities—the exact same interest that Mr. Pembroke asserts in this case. In an Objection to a Recommendation issued by Magistrate Judge Hegarty, the JJP Trust emphasized that it

> makes no specific request to stop an ongoing foreclosure action, but instead requests injunctive relief generally to stop the Defendants" debt collection activities. [FAC, ECF No. 22, pp. 17, 23]. An example of these general debt collection activities the [JJP] Trust is currently dealing with is the reporting of the state foreclosure judgment to credit agencies as a personal liability against Mr. Pembroke.

2016 Lawsuit, Doc. # 58 at 4.

Mr. Pembroke's claim that he has no control over the Trust does not alter this conclusion. Mr. Pembroke is the sole Trustee of the JJP Trust and, at least on one occasion, executed a substantial loan and refinance Note for, or in conjunction with, the JJP Trust. Mr. Pembroke has also been involved, in one way or another, in the JJP Trust's litigation with respect to this loan.[8] These facts cast doubt on Mr. Pembroke's assertion that he lacks any control over the JJP Trust. But even assuming that his control is minimal, it does not change the fact that both his and the JJP Trust's express interests in the 2016 Lawsuit and in this case are really and substantially the same. *Century Indem. Co. v. Hanover Ins. Co.*, 417 F.3d 1156, 1159 (10th Cir. 2005.) ("[P]rivity depends mostly on the parties' relationship to the subject matter of the litigation.").

The Court accordingly agrees with Magistrate Judge Varholak that privity exists between Mr. Pembroke and the JJP Trust. The second element of claim preclusion is therefore satisfied.

2. Causes of Action

It is undisputed that the JJP Trust raised many of the same allegations in the 2016 Lawsuit as Mr. Pembroke does in this case. Mr. Pembroke, however, contends that his FDCPA causes of action in this case are distinguishable from the FDCPA claims in the 2016 lawsuit because of Mr. Pembroke's "broader [personal] interest" with

---

[8] For example, Mr. Pembroke testified on the JJP Trust's behalf in the state court proceedings and his interests are mentioned multiple times in support of the JJP Trust's claims in the 2016 Lawsuit.

respect to the "collection of debts against him personally and that extend beyond property and assets owned by the trust." (Doc. # 128 at 13.)

The Court disagrees that Mr. Pembroke's "broader personal interest" sufficiently separates this case from the 2016 Lawsuit. What matters is not how broad the claims are but whether they stem from the same underlying transaction. Indeed, the Tenth Circuit applies the "transactional approach" in determining whether the two causes of action are the same. *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). "Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence." *Id.* What constitutes the same transaction is to be determined "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (internal quotations omitted). A new action may proceed "only where it raises new and independent claims, not part of the previous transaction . . . ." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006).

Mr. Pembroke's interests in this case stem from the same underlying transaction as the causes of action in the 2016 Lawsuit—Mr. Pembroke's refinance of his home and the accompanying (and eventually defaulted) Note. Indeed, the JJP Trust, with which Mr. Pembroke is in privity, specifically brought claims under the FDCPA alleging that the Furnisher Defendants were improperly reporting and attempting to collect on the Note.

16

The claims included, as here, assertions that the Furnishers Defendants had no right to collect on the debt, that they used deceptive means to do so, and made false and misleading representations. 2016 Lawsuit, Doc. #22 at 14–16; 57 at 21-27; (Doc. # 95 at ¶ 13.) The JJP Trust even expressly incorporated Mr. Pembroke's personal interests in its injunction request. 2016 Lawsuit, Doc. # 58 at 4. That new instances of allegedly improper debt collection and reporting have occurred since the 2016 Lawsuit does not make Mr. Pembroke's claims "new and independent." Nor does it signify that he could not have meaningfully participated in the 2016 Lawsuit. *See also Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000) (finding that plaintiff's attempt to "present[] some of her claims under the rubric of slightly different legal theories . . . d[id] not obscure the fact that they all ar[os]e out of a single transaction"); *see also Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1069 (D. Colo. 2013) ("Claim preclusion bars litigation of claims that . . . might have been decided only if the claims are tied by the same injury.").

The Court likewise rejects Mr. Pembroke's assertion that he "never had an opportunity to amend the complaint to include his claims in the [2016] lawsuit" because it was resolved on a motion to dismiss, rather than a full trial on the merits. (Doc. # 128 at 14.) Nothing in the record from the 2016 lawsuit suggests that Mr. Pembroke even attempted to join the case, despite the fact that it commenced in January 5, 2016, and was not dismissed until June 28, 2017—almost six months later. His present assertions that he was somehow prevented from joining the lawsuit and therefore "denied the

opportunity to fully and fairly litigate" his claims—some of which were expressly referenced in the pleadings—are wholly unsupported. (*Id*. at 14–15.)

The Court accordingly agrees with Magistrate Judge Varholak that Mr. Pembroke's FDCPA claims against the Furnisher Defendants arise from the same transaction, event, or occurrence raised in the 2016 Lawsuit, satisfying the final element of the claim preclusion doctrine. Mr. Pembroke's FDCPA claims are accordingly barred, and the Court dismisses them with prejudice.[9]

### V. CONCLUSION

For the foregoing reasons, this Court ORDERS as follows:

(1) Magistrate Judge Varholak's Recommendation (Doc. # 127) is AFFIRMED and ADOPTED as an Order of this Court;

(2) Defendant Trans Union's Motion to Dismiss (Doc. # 102) and Defendant Equifax's Renewed Motion for Judgment on the Pleadings (Doc. # 122) are GRANTED;

(3) All claims against Trans Union and Equifax, including any claims for punitive damages, are DISMISSED WITH PREJUDICE;

(4) Defendant SPS's Motion to Dismiss (Doc. # 103) and Defendant Chase's Motion to Dismiss (Doc. # 105) is GRANTED IN PART and DENIED IN PART;

(5) Claim Seven is DISMISSED WITH PREJUDICE; and

---

[9] Because Mr. Pembroke's FDCPA claims are barred by claim preclusion, —a defect that cannot be cured by better pleading—any amendment with respect to them would be futile. See *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims barred by statute of limitations and claim preclusion).

18

(6) Claims Three, Four, Five, and Six, as asserted against Defendants SPS and Chase, remain.

DATED: December 19, 2017

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge